IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          )
                                  )
          vs.                     )     Criminal No. 08-31
                                  )     See Civil Action No. 10-1044
JACK JARVIS BRYAN,                )
                                  )
          Defendant/petitioner.   )

MEMORANDUM OPINION

BLOCH, District J.

          Petitioner Jack Jarvis Bryan, on August 9, 2010, filed a

pro se Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or

Correct a Sentence of a Federal Inmate (Doc. No. 133) and

memorandum in support thereof (Doc. No. 134).  Upon

consideration of this motion, and upon further consideration of

the Government's response thereto (Doc. No. 136), filed on

August 31, 2010, and Petitioner's reply to the Government's

response (Doc. No. 141), filed on January 24, 2011, as well as

the affidavit filed by Petitioner (Doc. No. 151) on September

26, 2011, the Court denies Petitioner's motion for the reasons

set forth below.

I.   **Background**

          On January 29, 2008, an indictment was returned by the

Grand Jury charging Petitioner and co-defendant Jason P. Majeski

with conspiracy to commit bank fraud, in violation of 18 U.S.C.

§ 371.  On November 5, 2008, Petitioner pled guilty, and on

January 26, 2009, the Court sentenced him to a term of imprisonment of 60 months to be followed by three years' supervised release. (Doc. Nos. 107, 108). Petitioner subsequently appealed and challenged his conviction and sentence, arguing that, because the fraud was discovered before any money was disbursed, there was no loss, and that this Court therefore incorrectly calculated his sentencing factors under the United States Sentencing Guidelines, or, alternatively, that there was insufficient evidence to support this Court's findings.  On May 7, 2010, the Third Circuit Court of Appeals affirmed Petitioner's conviction and sentence.

On June 7, 2010, Petitioner filed his original motion pursuant to 28 U.S.C. § 2255.  On June 10, 2010, in accordance with United States v. Miller, 197 F.3d 644 (3d Cir. 1999), the Court issued an Order advising Petitioner that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prohibits consideration of a second or successive habeas petition absent certification from the Third Circuit that certain very specific and rare circumstances exist.  With that in mind, Petitioner was ordered to advise the Court as to how he wished to proceed in this case, specifically, whether he wished to have his motion ruled upon as filed and lose the ability to file successive petitions absent Third Circuit certification, or whether he wished to withdraw the motion and file one all-inclusive Section

2255 petition within the one-year statutory period of the AEDPA.
On July 9, 2010, Petitioner moved to withdraw his motion so as
to file an all-inclusive motion, and the Court granted said
motion.  (Doc. Nos. 130, 131).  On August 9, 2010, Petitioner,
acting pro se, filed the present motion pursuant to Section 2255
and memorandum in support thereof.  He has also sought leave to
file various additional documents in support of his motion,
which the Court has permitted him to do.  The Court will address
the claims raised in Petitioner's motion below.

## II.  **Discussion**

Pro se pleadings are held to less stringent standards than
formal pleadings drafted by lawyers.  See Haines v. Kerner, 404
U.S. 519, 520 (1972); Holley v. Department of Veterans Affairs,
165 F.3d 244, 247 (3d Cir. 1999).  However, even a pro se
plaintiff must be able to prove a "set of facts in support of
his claim which would entitle him to relief."  Haines, 404 U.S.
at 520-21 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

As noted, Petitioner brings his pro se motion pursuant to
Section 2255.  This statute permits a "prisoner in custody under
sentence of a court established by Act of Congress claiming the
right to be released upon the ground that the sentence was
imposed in violation of the Constitution or laws of the United
States...[to] move the court which imposed the sentence to
vacate, set aside or correct the sentence."  28 U.S.C. §

2255(a).  An evidentiary hearing is not required on a Section 2255 motion if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

Petitioner's motion and supporting brief are not models of clarity.  Although he purports to raise four grounds upon which he claims he is entitled to relief under Section 2255, his analysis seems to intertwine and confuse the issues.  In any event, he seems to raise the following grounds: ineffective assistance of counsel, unwarranted disparity between his sentence and the one received by his co-defendant, the Court's abuse of discretion in denying his motion for new counsel, and illegal sentence enhancement in violation of the Sixth Amendment.  While his motion is not entirely clear on the matter, it appears that his ineffective assistance claim also encompasses his counsel's conduct in regard to the other alleged grounds for relief.

This distinction is significant because Petitioner's substantive claims are procedurally defaulted, since these issues could certainly have been raised on direct appeal. "Section 2255 petitions are not substitutes for direct appeals and serve only to protect a defendant from a violation of the constitution or from a statutory defect so fundamental that a complete miscarriage of justice has occurred."  United States v.

Cepero, 224 F.3d 256, 267 (3d Cir. 2000) (abrogated on other
grounds by Gonzalez v. Thaler, 132 S. Ct. 641 (2012) (citing
Reed v. Farley, 512 U.S. 339, 348 (1994)).  See also Young v.
United States, 124 F.3d 794, 796 (7th Cir. 1997); United States
v. Essig, 10 F.3d 968, 979 (3d Cir. 1993) ("[Section] 2255 is no
longer a necessary stand-in for the direct appeal of a
sentencing error because full review of sentencing errors is now
available on direct appeal.").  Arguments that could have been
made on direct appeal cannot be raised in a Section 2255 motion
unless the petitioner can demonstrate both cause and prejudice.
See Bousley v. United States, 523 U.S. 614, 622 (1998) ("Where a
defendant has procedurally defaulted a claim by failing to raise
it on direct review, the claim may be raised in habeas only if
the defendant can first demonstrate either 'cause' and actual
'prejudice,' or that he is 'actually innocent.'") (citations
omitted); Essig, 10 F.3d at 979 (holding that the cause and
prejudice standard of United States v. Frady, 456 U.S. 152, 167-
68 (1982), "applies to § 2255 proceedings in which a petitioner
seeks relief from alleged errors in connection with his sentence
that he has not directly appealed").

   Petitioner did not raise the issues of sentencing
disparity, the Court's failure to appoint new counsel, or
improper sentence enhancement on direct appeal.  Moreover, he
has offered no objective evidence as to why he did not raise

these claims on appeal.  While his ineffective assistance of

counsel claim arguably includes a claim of actual innocence, his

substantive claims do not relate to the issue of guilt.

Therefore, such claims, standing alone, would properly be

dismissed.  See Marone v. United States, 10 F.3d 65, 67 (2d Cir.

1993); Essig, 10 F.3d at 979 ("In procedural default cases, the

cause standard requires the petitioner to show that 'some

objective factor external to the defense impeded counsel's

efforts' to raise the claim.") (quoting McCleskey v. Zant, 499

U.S. 467, 493 (1991)).

       However, as explained, Petitioner seems also to raise an

ineffective assistance of counsel claim in connection with each

of these allegations.  Such claims would properly be raised in

this motion since an exception to the procedural default rule is

that a defendant need not demonstrate cause and prejudice when

he raises a claim of ineffective assistance of counsel.  See

United States v. DeRewal, 10 F.3d 100, 104 (3d Cir. 1993).

Indeed, a Section 2255 motion is the proper and preferred

vehicle for alleging ineffective assistance of counsel.  See

United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994).

Accordingly, although the substantive claims properly are

procedurally defaulted, Petitioner's related ineffective

assistance of counsel claims are not.

**A.**    **General Ineffective Assistance of Counsel Claims**

A defendant seeking relief under Section 2255 on the grounds of ineffective assistance of counsel "must show both that: (1) counsel's representation fell below an objective standard of 'reasonableness under prevailing professional norms;' and (2) the defendant suffered prejudice as a result - that is, there is a reasonable probability that, but for the counsel's deficient performance, the result of the proceeding would have been different." Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996) (citing Strickland v. Washington, 466 U.S. 668, 694 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

> In reviewing counsel's performance, [a court] must be highly deferential. [A court] must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. Moreover, [a court] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Sistrunk, 96 F.3d at 670 (citing Strickland, 466 U.S. at 689-90) (internal quotation marks and citations omitted). "It is only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in

scrutinizing counsel's performance." United States v. Kauffman,

109 F.3d 186, 190 (3d Cir. 1997) (quoting United States v. Gray,

878 F.2d 702, 711 (3d Cir. 1989)).

Accordingly, since the focus of Petitioner's valid claims

is the conduct of his counsel, he must demonstrate both

ineffective assistance and prejudice under Strickland.

Arguably, this is a different showing than he would have to make

if his substantive claims themselves were not procedurally

defaulted. However, in the end, it makes little if any

difference, because the Court must necessarily analyze

Petitioner's substantive claims in order to resolve his

ineffective assistance claims. For the reasons that follow, the

Court finds no merit in any of Petitioner's claims and finds

that the record conclusively shows that he is not entitled to

relief under Section 2255 on any of the grounds he alleges.[1]

---

[1]     Since the record itself conclusively shows that Petitioner
is not entitled to relief, no evidentiary hearing is necessary.
In so finding, the Court notes that Petitioner recently filed a
"Motion for Hearing" (Doc. No. 152) in which he requests a
hearing on the issues he has raised. However, for the most
part, he simply reiterates arguments he has already raised. He
does, however, now claim that an individual named Ron Getner can
confirm the validity of the documents relevant to his claims.
The Court notes that Petitioner provides no basis for Mr. Getner
having any knowledge concerning these documents. Nor does he
explain why he is only submitting this name now, when the Court
gave him the opportunity, pursuant to its August 23, 2011 Order
(Doc. No. 150), to file with the Court the affidavit of any
witnesses whose testimony he wished to present. Rather than
submitting anything from Mr. Getner, Petitioner refiled an
affidavit from Doris Kearns which had already been filed. In

Petitioner discusses various aspects of his counsel's performance which he seems to allege were ineffective at various parts of his memorandum.  Most of his allegations are vague and ambiguous.  However, in his reply, he clarifies that the "main issue involving ineffectiveness of counsel" pertains to counsel's alleged failure to submit to the Court a pair of documents which Petitioner claims absolve him of guilt and prove his innocence.  The documents include an August 9, 2007 memorandum of interview regarding an interview by Postal Inspector K.B. Wiloch of Travis Kruse, a Relationship Manager in the Private Client Group of PNC Bank, and a July 12, 2007 commitment letter purportedly from World Business Capital, Corp. ("WBC").  Petitioner claims that these documents absolve him of any wrong-doing and that counsel erred in not entering the documents into evidence.  The Court finds no merit in this argument.

It is important to clarify just what Petitioner is claiming.  He claims that there are two documents proving his innocence and that these documents were not entered into evidence.  He does not claim that their existence was hidden from him, or that his counsel made misrepresentations about them to induce him to plead guilty.  To the contrary, he seems to

---

short, nothing in this new motion demonstrates the need for a hearing on Petitioner's Section 2255 motion.

indicate that he was well-aware of the documents.  In fact, other than an extremely vague and conclusory statement about his counsel having no right to coerce or prod him into a plea, he makes no allegations that he was tricked or coerced in any way into pleading guilty.  The issue, according to Petitioner, is that his counsel did not enter these allegedly exculpatory documents into evidence.

There are several problems with Petitioner's argument. First, it is not clear when and how these documents should have been entered into evidence.  Petitioner argues that the documents prove his innocence, yet he chose to plead guilty rather than to proceed to trial.[2]  As stated above, he does not adequately allege, nor is there anything in the record to suggest, that he was coerced into doing so.  As such, there would have been no basis for offering this evidence.  Such evidence would not have been appropriate at a plea hearing, and

---

[2]    Although Petitioner raises vague allegations regarding being on medication during his plea hearing, he in no way alleges that his thinking process was affected by such medication, nor does he attempt to support such an allegation. The Court notes that Petitioner was questioned regarding such issues during the plea colloquy and was deemed to be competent to plead.  His vague allusion that this may not have been so is woefully insufficient to overcome this finding.

his counsel was in no way ineffective for not attempting to enter it at the hearing.[3]

More importantly, by pleading guilty, Petitioner admitted that he is guilty of the charge of conspiracy to commit fraud. He also agreed that there is a factual basis for the claim, including that he used fraudulent documents in an attempt to obtain a loan.  Guilty pleas are accorded a great measure of finality.  See Blackledge v. Allison, 431 U.S. 63, 71 (1977). Representations and admissions made under oath at a plea hearing are entitled to great deference, and Petitioner faces a great burden in overcoming the strong presumption of the veracity of any such representations and admissions.  See id. at 73-74; Morris v. United States, 2008 WL 1740679, at *5 (D. Del. Apr. 16, 2008).  Petitioner does not explain why, if he was aware that there were documents absolving him of any wrong-doing and proving his innocence, he pled guilty in the first place.  He thus offers no grounds for overcoming the strong presumption that his sworn statements admitting his guilt in open court were true.

In any event, these documents do not demonstrate that Petitioner is not guilty of conspiracy to commit fraud.  At

---

[3]     The Court notes that, although Petitioner's argument is that these documents exonerate him completely, he seems also to argue that they would have affected his sentencing.  The Court will address that argument below.

best, they would go to the issue of loss.  They do not, however,

establish in any way that Petitioner did not use fraudulent

documents in an attempt to obtain a bank loan.  In sum, to the

extent that Petitioner argues that his counsel was ineffective

for failing to introduce certain pieces of allegedly exonerating

evidence to establish that he was not guilty of the charges

against him, the claim has no merit.

As mentioned, however, although Petitioner emphasizes that

these documents prove his innocence, he also seems to argue that

they would have impacted his recommended guideline sentencing

range under the Sentencing Guidelines, and, presumably, that his

counsel was ineffective for failing to enter them as evidence

that there was no intended loss.  Again, the Court finds no

merit to such an argument.

Petitioner's counsel did argue that there was no actual or

intended loss, and that Petitioner's offense level therefore

should not have been increased by 28 levels pursuant to USSG §

2B1.1(b)(O).[4]  The Court rejected this argument based on

Petitioner's failure to verify that he had the assets/income to

pay back such a loan and based on Petitioner's lack of

---

[4]     It should be pointed out that, although Section 2B1.1(b)(O)
calls for a 28-level increase to Petitioner's offense level, his
sentence was limited by statute to five years.  Accordingly, the
amount of intended loss, while a factor considered by the Court,
did not increase his sentence to the degree which he implies
that it did.

12

credibility.   The memorandum of interview has no bearing

whatsoever on these findings, as it merely sets forth the

testimony of a loan officer as to what was communicated to him

about Petitioner's assets.   The memorandum does not establish in

any way that the loan officer had any independent basis of

knowledge regarding these assets.

As to the letter from WBC, the Court notes that Petitioner

is relying on a document that was submitted as part of the fraud

for which he was convicted.   There is no reason to believe that

any credibility would have been assigned to such a document.

Indeed, the Court does not doubt that any number of documents

submitted by Petitioner in support of his loan would suggest

that he had sufficient funds to pay off his loan.   Petitioner is

essentially making the argument that the documents he admitted

were fraudulent are evidence of the ability and intent to pay

back the loan, which borders on frivolous.   It should also be

noted that Petitioner, when given the opportunity to

substantiate his claims and verify his assets to the probation

officer in connection with the preparation of the presentence

investigation report, failed to do so.

Moreover, a close reading of the document itself

demonstrates that WBC's commitment to purchase a certificate of

deposit as collateral for the loan sought by Petitioner was only

a conditional commitment and that more information was required

by WBC before it would do so.  Among the other conditions, the
"depositor," i.e., Petitioner, was required to produce proof of
funds along with other disclosures.  This document in no way
establishes that Petitioner in fact had sufficient funds and, in
fact, it indicates that such proof was still forthcoming.[5]  That
WBC was conditionally interested in working with Petitioner
once, among other things, he established that he had the money
to purchase the CD, is of little if any relevance.

In essence, Petitioner identifies two documents of minimal
relevance, one of which was actually part of the fraud itself,
and claims that his counsel was ineffective for failing to
submit them in support of his argument that he intended to pay
back the loan.  But neither establishes an ability to pay the
loan back, and neither improves Petitioner's credibility or
changes his long history of criminal fraud.  Even if the Court
found that counsel was ineffective for failing to submit such
weak evidence, it cannot say that the failure to do so was
prejudicial.

---

[5]     Nor does the affidavit from Doris Kearns, which Petitioner
touts as "conclusive" evidence, demonstrate anything different.
Taking the affidavit at face value, it shows nothing more than
that she wired a total of $10,000 to WBC at Petitioner's
request.  This does not demonstrate in any way that Petitioner
had the remaining $234,990,000 needed to secure a CD through
WBC.

Petitioner's other claims as to his general ineffectiveness claim (as opposed to the more specific ones addressed below in conjunction with his substantive issues) are so lacking in specificity, so vague, and so conclusory that no further discussion is warranted. See United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000); United States v. Dawson, 857 F.2d 923, 928 (3d Cir. 1988). Petitioner seems to argue that his counsel was ineffective because Petitioner was "isolated" from counsel, because his counsel failed to contact two doctors as to the status of his health, because counsel failed to download general information about financial statements and, generally, to educate himself on financial matters, because his Speedy Trial Act rights were violated, and because of several other vague grounds difficult to fully understand. However, he at no point claims with any specificity whatsoever that any of these grounds impacted the outcome of his case in any way, and the record does not show differently. Therefore, Petitioner could not make a showing of prejudice even if his claims were not so vague. The Court further notes that Petitioner's counsel did, in fact, argue for a variance and/or a departure based on Petitioner's health and submitted evidence in support thereof, but the Court declined to vary and/or depart on that or any other ground.

B.   **Remaining Issues**

As discussed above, Petitioner's substantive claims are procedurally defaulted.  However, he does appear to raise an ineffective assistance of counsel claim in regard to each issue, and these issues are properly raised here.  Regardless, there is no merit to any of them.

Petitioner argues that there was unwarranted disparity between his sentence and the one received by his co-defendant, Jason P. Majeski, and, implicitly, that his counsel was ineffective for failing to raise this argument.  However, this issue was, indeed, raised by counsel in his sentencing memorandum filed on Petitioner's behalf.  (Doc. No. 105).  The Court rejected the argument, pointing out that Majeski pled guilty to a separate crime and had a much less serious criminal history.  The Court further notes that Majeski worked with law enforcement in a way Petitioner did not.  Accordingly, not only was the issue raised, there would have been no prejudice to Petitioner if it had not been, as the Court was aware of substantial reasons for imposing different sentences in regard to the two co-defendants.

Petitioner's argument that the Court abused its discretion in failing to grant his October 27, 2008 motion for new counsel (Doc. No. 88) is frivolous.  He himself withdrew this motion at his change of plea hearing.  Moreover, it is unclear in what way counsel was ineffective in regard to this motion.  To the extent

that this argument goes to Petitioner's vague argument about
being "isolated" from his counsel, as the Court explained above,
Petitioner in no way explains how this alleged "isolation"
impacted the result in this case.

Finally, as to Petitioner's claim that his sentence was
unlawfully enhanced based on facts not proved to a jury, and,
apparently, that his counsel was ineffective for failing to
raise this argument, the Petitioner is simply wrong about the
governing law.  While Petitioner cites Apprendi v. New Jersey,
530 U.S. 466 (2000,) and Blakely v. Washington, 542 U.S. 296
(2004), in addition to United States v. Booker, 543 U.S. 220
(2005), it is Booker that applies to sentencing factors under
the United States Sentencing Guidelines.  In Booker, the Supreme
Court held that, if rendered merely advisory, the Guidelines
would no longer implicate the Sixth Amendment, and, accordingly,
held that the Guidelines were no longer mandatory.  The Court,
therefore, expressly refused to graft the Sixth Amendment's
requirements regarding a jury finding beyond a reasonable doubt
any fact that could increase the defendant's statutory maximum
sentence onto the Sentencing Guidelines.  Pursuant to Booker,
then, since the Guidelines are now merely advisory, sentencing
factors under the Guidelines need not be determined by a jury
beyond a reasonable doubt.  Rather, the Court may determine the
applicability of sentencing factors in determining the advisory

guideline sentencing range by a preponderance of the evidence. See United States v. Fisher, 502 F.3d 293, 305-06 (3d Cir. 2007). Petitioner's argument appears to be based primarily on case law from the period between Blakely and Booker that is no longer in effect.

## III. **Conclusion**

For all of the above-stated reasons, Petitioner's motion is denied in its entirety. Further, this Court will not issue a certificate of appealability in this case. A certificate of appealability may issue under Section 2255 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. 2253(c)(2). For the reasons set forth above, Petitioner has not made a substantial showing of the denial of a constitutional right and a certificate of appealability should not issue in this action.

> s/Alan N. Bloch
> United States District Judge

Dated:      February 8, 2012

ecf:        Counsel of record

cc:         Jack Jarvis Bryan, #75523-011
            FMC Rochester
            P.O. Box 4000
            Rochester, MN   55903